IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 24, 2004

## HOWARD EUGENE BUCHANAN v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Dickson County**
**No. CR-6085     Robert E. Burch, Judge**

---

**No. M2003-01815-CCA-R3-PC - Filed May 19, 2004**

---

The petitioner, Howard Eugene Buchanan, was convicted by a jury in the Dickson County Circuit Court of aggravated kidnapping, assault, and evading arrest. He received a total effective sentence of eighteen years incarceration in the Tennessee Department of Correction. Subsequently, the petitioner filed a petition for post-conviction relief, alleging that the trial court erred in failing to instruct the jury as to the defense of alibi and that he received the ineffective assistance of counsel. After a hearing, the post-conviction court denied the petition, and the petitioner appeals. Upon review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ALAN E. GLENN, JJ., joined.

J. Reese Holley, Dickson, Tennessee, for the appellant, Howard Eugene Buchanan.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; Dan M. Alsobrooks, District Attorney General; and Suzanne Lockert, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The petitioner's convictions stem from the events of August 28, 1997, through August 30, 1997. See State v. Howard Buchanan, No. M2000-00878-CCA-R3-CD, 2001 WL 261544, at \*2 (Tenn. Crim. App. at Nashville, Mar. 16, 2001). At trial, the victim testified that although she had been dating the petitioner, she had not given him a key to her duplex. Id. at \*1. On August 28, 1997, the petitioner used a stolen key to enter her duplex and held her prisoner for the next three days. Id. at \*2. The petitioner was physically and verbally abusive during this incident. Id. Finally, the victim was able to escape and call the authorities. Id. at \*3. The petitioner was arrested on August 30, 1997. Id. The petitioner's convictions were affirmed by this court on direct appeal. Id. at \*6.

Subsequently, the petitioner filed for post-conviction relief. One of the petitioner's chief complaints was that the trial court erred in failing to give the jury an alibi instruction. The petitioner claimed that two of his witnesses, Anthony Springer and Gennifer Frasier,[1] fairly raised the issue of alibi, and, therefore, an instruction on alibi was warranted. The petitioner also contended that each counsel that represented him was ineffective in failing to raise the issue of an alibi instruction. Finally, the petitioner claimed that his trial counsel was ineffective in failing to properly prepare for trial.

On January 30, 2003, the post-conviction court held an evidentiary hearing on the petitioner's claims. At the hearing, it was revealed that the petitioner had been represented by three separate attorneys; one attorney represented the petitioner at trial (trial counsel), another at the motion for new trial (new trial counsel), and a third on appeal (appellate counsel).

At the post-conviction hearing, trial counsel testified that he visited the petitioner two or three times prior to trial. Trial counsel explained that even though he had prepared and signed an agreed order allowing discovery, the order was never signed by the State or filed with the trial court. Nevertheless, trial counsel stated that he was able to view the State's file. He maintained, "As I recall, there wasn't a lot to be had in this thing." Counsel stated that the case was basically a case of "he said, she said."

Trial counsel testified that the petitioner failed to disclose possible witnesses until the day prior to trial. Despite the delay, counsel stated that "I interviewed the witnesses that [the petitioner] asked me to." Trial counsel did not recall receiving a witness list around March 5, 1998, but confessed that his memory of the case was poor. Trial counsel maintained, "I particularly didn't make a whole lot of notes when I was a defense lawyer." Trial counsel admitted that he was "sure" he did not, prior to trial, review with witnesses the questions he would ask during trial. He explained, "I expected them to tell the truth. That shouldn't require any rehearsal."

Trial counsel recalled that Anthony Springer and Frasier testified at the petitioner's trial. Anthony Springer testified that the petitioner helped him work on a car the night before the petitioner's arrest, and Frasier testified that she saw the petitioner outside the victim's residence at some point during the three-day incident. However, trial counsel stated that the witnesses' testimony "was a disaster." Trial counsel testified that Anthony Springer said he saw the petitioner in September, and Frasier stated she saw the petitioner prior to August 23.[2] The events for which the petitioner was on trial occurred on August 28 through 30. Notably, trial counsel recalled that after the witnesses testified, particularly after Anthony Springer's testimony, "the jury wanted to know what they would have to do or what could happen to get him charged with perjury because that was the supposed alibi witness."

---

[1] Frasier's name is also spelled in the record "Jennifer Frazier."

[2] The trial transcript reveals that Anthony Springer initially stated that he saw the petitioner in September, but he later changed his testimony, saying that he was with the petitioner at the end of August on the Friday before the petitioner's arrest.

Trial counsel testified that "the witnesses that came in here gave some not very credible testimony. . . . [I]t seemed like something they had kind of come up with some kind of story that they had kind of come up to cover up with on his assistance. I put them on and it didn't help him very much." Regardless, counsel stated that he felt compelled to have Anthony Springer and Frasier testify because the petitioner "insisted that he had an alibi and these were his witnesses. I had to take the witnesses as I found them."

Trial counsel conceded that he had not asked for an alibi instruction, explaining that he did not believe the instruction would have aided the petitioner. He stated, "I think [the jury] pretty much would have understood what Mr. Springer and Miss Frasier were saying."

Trial counsel admitted that although he knew the victim's minor son was present during the offense, he did not examine school records to see if the child had attended school on the days in question. Additionally, trial counsel did not examine the victim's telephone records after she alleged that she could not call for help from her duplex because her telephone was not operable.

Trial counsel stated that he tried to impeach the victim's credibility by introducing records of her past criminal history. However, at trial it became clear that the records pertained to another woman with the same name as the victim. Trial counsel opined that his unsuccessful impeachment did not affect the jury one way or another.[3]

At the post-conviction hearing, the petitioner also questioned his new trial counsel. New trial counsel testified that when he was appointed to represent the petitioner on his motion for new trial he was "brand spanking new at defense work" because he had previously been a prosecutor. However, the public defender's office contracted with outside attorneys to handle some appellate work. Accordingly, new trial counsel only handled the petitioner's motion for new trial and appellate counsel was responsible for the petitioner's appeal.[4]

New trial counsel testified that he contemplated raising the issue of ineffective assistance of counsel during the motion for new trial, but he dismissed the notion because it was not the proper forum for an ineffective assistance argument. New trial counsel stated that he considered the ineffective assistance claim because the file he "inherited" from trial counsel, who had left the public defender's office to work for the district attorney's office, did not contain a request for discovery or any indication that trial counsel had interviewed any witnesses prior to trial. In fact, new trial counsel testified that trial counsel "indicated to me that he did not talk to any of the witnesses to prepare for trial," nor did he subpoena any witnesses. New trial counsel acknowledged that often, regardless of a filed agreed discovery order, the State would allow the defense to have open file discovery.

---

[3] The trial transcript reflects that the introduction of criminal records occurred during a jury-out hearing.

[4] Appellate counsel did not testify at the post-conviction hearing.

Additionally, new trial counsel stated that his case file contained a list of witness names that appeared to be in trial counsel's handwriting. The file also contained a letter from the petitioner that stated, "I will send the witnesses by Friday." The letter was dated March 5, 1998. The petitioner's trial was held on March 20, 1998, a Friday, and March 23, 1998, the following Monday. New trial counsel acknowledged that he never asked trial counsel if all available information on the case was contained in the petitioner's case file.

New trial counsel stated that he "suppose[d]" the testimony of Anthony Springer and Frasier would have provided an alibi for the petitioner. However, new trial counsel was repeatedly equivocal, maintaining that "it was not a classic alibi situation." Counsel explained that Anthony Springer and Frasier essentially testified that they had seen the appellant on occasion during the three days he was supposedly confining the victim to her duplex. New trial counsel concluded, "I guess you can consider it an alibi." New trial counsel testified that the jury was not given an alibi instruction, and he did not raise the issue in the motion for new trial because he did not think to do so. Further, the issue was never raised during the petitioner's direct appeal.

New trial counsel admitted that Anthony Springer repeatedly stated he saw the appellant in September, and Fraizer stated that she saw the appellant prior to August 23. New trial counsel debated whether such testimony was the result of dishonesty or the result of poor witness preparation. Either way, new trial counsel observed that "clearly they were not doing a very good job of testifying." New trial counsel acknowledged that "there was some serious question about the credibility of those witnesses based on their testimony." Regardless, new trial counsel maintained, "It's a serious concern when an attorney wouldn't talk to a witness, particularly in a case of this magnitude, before putting them on the stand."

The petitioner testified on his own behalf at the post-conviction hearing. He maintained that if he had not been active in his case, he would not have had any witnesses at his trial. The petitioner claimed that he had limited meetings with trial counsel, but at the meetings he gave trial counsel a list of potential witnesses. He maintained that trial counsel "kind of said that I didn't need no witnesses or something." The petitioner averred that his alibi was that he went to Nashville with Anthony Springer on Friday, August 29, 1997, and that he possibly saw Anthony Springer again on Saturday morning.

The petitioner also complained that he gave his witness list to his new trial counsel and appellate counsel. However, new trial counsel "didn't bring forth no witnesses I gave him on the list." The petitioner also claimed that appellate counsel "let [him] down" on appeal "[a]s far as calling my witnesses."

Gennifer Frasier, who testified at the petitioner's trial, also testified at the post-conviction hearing. Frasier stated that trial counsel spent no time with her prior to trial. In fact, she was unaware that she would be a witness until she was called to the stand.

Finally, Daniel Springer, the father of Anthony Springer and Frasier, testified at the post-conviction hearing. Daniel Springer stated that he did not recall speaking with trial counsel prior to trial. He maintained that the victim came to his house on August 29, 1997. Daniel Springer remembered the date because the family was celebrating his son's birthday. He maintained that he wanted to testify at the petitioner's trial, but he was never called as a witness.

After the hearing, the post-conviction court entered a detailed order denying the petitioner post-conviction relief. In the order, the post-conviction court stated:

> The sum total of the defense witnesses who testified at trial and at the Post-Conviction hearing do not constitute an alibi defense. The testimony was that the witness[es] saw either Petitioner or Victim at some point over the three day episode but, taken together, they do not account for Petitioner's whereabouts during the entire event. Notably, no defense witnesses testified to Petitioner's whereabouts on August 30, the day of his arrest. This one day would be sufficient to have committed the crimes charged. This being the case, the function of the witnesses was not to establish an alibi but to impeach the testimony of the victim that Petitioner held her against her will for the three days prior to his arrest. Two witnesses so testified at Petitioner's trial and the only other witness presented who did not testify at trial was Daniel Springer, Sr., whose testimony would have been cumulative to the testimony of the other two. Petitioner was not prejudiced by the alleged failure of [trial counsel] to interview the witnesses.

In conclusion, the post-conviction court determined that the issue of alibi was not fairly raised at trial; therefore, the trial court did not err in failing to give the instruction, nor was the petitioner prejudiced by the failure of counsel to raise the issue. On appeal, the petitioner contests this determination.

## II.  Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-210(f) (1997).[5] "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.2 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence

---

[5] Since the post-conviction hearing in the instant case, this provision has been codified at Tennessee Code Annotated section 40-30-110(f) (2003).

adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, we afford the post-conviction court's findings of fact the weight of a jury verdict, with such findings being conclusive on appeal absent a showing that the evidence in the record preponderates against those findings. Id. at 578.

Initially, we note that it is undisputed that the petitioner failed to raise in his direct appeal the issue of the trial court's error to instruct the jury on alibi. Generally, absent limited exceptions, "[a] ground for relief is waived if the petitioner personally or through an attorney failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented." Tenn. Code Ann. §§ 40-30-206(g) (1997), 40-30-106(g) (2003); see also State v. Townes, 56 S.W.3d 30, 35 (Tenn. 2003), overruled on other grounds by State v. Terry, 118 S.W.3d 355 (Tenn. 2003). In the instant case, the petitioner has not met any of the exceptions for determining that this issue is not waived. Accordingly, we conclude that the petitioner has waived this issue by failing to raise it during his direct appeal. See Dennis Ray Gilliland v. State, No. M2002-01865-CCA-R3-PC, 2003 WL 22703227, at *6 (Tenn. Crim. App. at Nashville, Nov. 14, 2003), perm. to appeal denied, (Tenn. 2004); Milton Lee Cooper v. State, No. E2001-01527-CCA-R3-PC, 2002 WL 31548093, at *5 (Tenn. Crim. App. at Knoxville, Nov. 18, 2002), perm. to appeal denied, (Tenn. 2003). However, because the petitioner also claims that counsel were ineffective in failing to raise the alibi issue, we will examine the alibi issue in that context.

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). However, we will review the post-conviction court's conclusions of law purely de novo. Id.

"To establish ineffective assistance of counsel, the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984)). In evaluating whether the petitioner has met this burden, this court must determine whether counsel's performance was within the range of competence required of attorneys in criminal cases. See Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). The same standard for determining ineffective assistance of counsel applies when examining the performance of trial counsel and appellate counsel. See Campbell v. State, 904 S.W.2d 594, 596 (Tenn. 1995).

This court has previously defined "alibi" as "'[a] defense based on the physical impossibility of a defendant's guilt by placing the defendant in a location other than the scene of the crime at the relevant time.'" State v. Looper, 118 S.W.3d 386, 416 (Tenn. Crim. App. 2003) (quoting Black's Law Dictionary 72 (7th ed. 1999)), cert. denied __ U.S.__, 124 S. Ct. 836 (2003). It is a long-standing principle in Tennessee that "where the evidence raises the issue of an alibi, it is the duty of the Trial Judge to give proper instructions on that issue, and that when he fails to give such an instruction, or gives an erroneous one, it is reversible error." Poe v. State, 370 S.W.2d 488, 490-91 (Tenn. 1963); see also Moffitt v. State, 29 S.W.3d 51, 57 (Tenn. Crim. App. 1999). As long as the

issue of alibi is fairly raised by the evidence, the trial court is obligated to instruct the jury on alibi regardless of any request by the defendant. See Poe, 370 S.W.2d at 491. Moreover, while the trial court is required to instruct the jury on alibi if the issue is fairly raised by the evidence, the trial court is not required to give an alibi instruction when the issue has not been fairly raised by the evidence. See Almonrode v. State, 567 S.W.2d 184, 186-87 (Tenn. Crim. App. 1978).

This court has previously quoted with approval that

> "if the asserted alternate location [for an alibi defense] is such that, based on the version of events contended for by the defense, it would remain within the realm of physical possibility for the defendant to have committed the crime, then the defense is nothing more than a denial and would not rise to the level of alibi."

Looper, 118 S.W.3d at 416 (quoting Owens v. State, 809 So. 2d 744, 746-47 (Miss. Ct. App. 2002)). The post-conviction court noted that the petitioner did not have an "alibi" for the entire three days that he allegedly terrorized the victim. In fact, the court stated that "no defense witnesses testified to the petitioner's whereabouts on August 30, the day of his arrest. This one day would be sufficient to have committed the crimes charged." We conclude that the alibi defense was not fairly raised by the evidence. Therefore, the trial court was not obligated to instruct the jury on the alibi defense. Accordingly, based upon the fact that an instruction on alibi was not warranted, we conclude that the petitioner's counsel were not ineffective for failing to request the instruction. See Eugene Turner v. State, No. W2003-00824-CCA-R3-PC, 2004 WL 221211, at *10 (Tenn. Crim. App. at Jackson, Jan. 29, 2004), application for perm. to appeal filed (Mar. 24, 2004); Gilliland, No. M2002-01865-CCA-R3-PC, 2003 WL 22703227, at **7-8; Cooper, No. E2001-01527-CCA-R3-PC, 2002 WL 31548093, at *8.

Finally, the petitioner complains that his trial counsel was ineffective in failing to properly prepare for trial. At the post-conviction hearing, the petitioner maintained that trial counsel did not interview the witnesses or research different avenues of cross-examination. However, despite these contentions the petitioner never specifically alleged what prejudice he suffered as a result of trial counsel's lack of preparation. Moreover, regarding the petitioner's complaint of trial counsel's failure to call Daniel Springer to testify, the post-conviction court noted that Daniel Springer's testimony was largely cumulative to the testimony of Anthony Springer and Frasier. We conclude that the evidence does not preponderate against this finding. Accordingly, the petitioner failed to prove by clear and convincing evidence that he received the ineffective assistance of counsel.

## III. Conclusion

Finding no error, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE